**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

February 26, 2013

LETTER TO COUNSEL

RE:   *Mary Wilson v. Michael J. Astrue, Commissioner of Social Security*;
      Civil No. SAG-12- 313

Dear Counsel:

On February 1, 2012, the Plaintiff, Mary Wilson, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). I have considered the parties' cross-motions for summary judgment and I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the reasons that follow, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Wilson filed her claim on May 12, 2009, alleging disability beginning on April 15, 2009. (Tr. 147-154). Her claim was denied initially on September 9, 2009, and upon reconsideration on June 30, 2010. (Tr. 86-90, 91-94). A hearing was held on July 19, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 37-73). Following the hearing, on August 31, 2011, the ALJ determined that Ms. Wilson was not disabled during the relevant time frame. (Tr. 11-36). The Appeals Council denied Ms. Wilson's request for review (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Wilson suffered from the severe impairments of depression, somatoform disorder, scoliosis, osteoarthritis of the bilateral knees, restless leg syndrome, migraines, carpal tunnel syndrome, and obesity. (Tr. 16). Despite these impairments, the ALJ determined that Ms. Wilson retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can stand and/or walk (with normal breaks) for a total of only 2-4 hours in an 8-hour workday; only occasionally use leg controls, balance, stoop, kneel, crawl, crouch, and climb ramps/stairs; never climb ladders/ropes/scaffolds; can only frequently (as opposed to constantly) handle and finger bilaterally; and is mentally limited to unskilled, routine, and repetitive work.

(Tr. 22). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Wilson could perform jobs that exist in significant numbers in the national economy, and that she therefore was not disabled during the relevant time frame. (Tr. 30-31).

*Mary Wilson v. Michael J. Astrue, Commissioner of Social Security*
Civil No. SAG-12-313
February 26, 2013
Page 2

Ms. Wilson presents three arguments on appeal: (1) that the ALJ failed to follow the treating physician rule by declining to accord controlling weight to the opinions of three of her treatment providers; (2) that the ALJ's physical and mental RFC findings were incomplete; and (3) that the ALJ's hypothetical was incomplete and not based on substantial evidence. Each of Ms. Wilson's arguments lack merit.

First, the ALJ properly assigned weight to the opinions of Dr. Archibong, plaintiff's treating psychologist, Dr. Fleurimond, plaintiff's primary care physician, and Dr. Bennett, plaintiff's orthopedic surgeon. Under the treating physician rule, the ALJ generally must give more weight to a treating physician's opinion, *see* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), but where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be afforded significantly less weight. *Craig*, 76 F.3d at 590. In addition, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(c)(2); SSR 96-5p. Using those legal standards, the ALJ properly assigned weight to the opinions of Dr. Archibong, Dr. Fleurimond and Dr. Bennett.

In this case, the ALJ expressly considered, at some length, the treatment notes and opinions of all three sources. (Tr. 16-19, 28-30). He found that all three opinions were entitled to little weight because they were internally inconsistent and unsupported by the balance of the evidence. For example, Ms. Wilson consistently was assessed at 60 on the Global Assessment of Functioning Scale (Tr. 402, 301, 303, 305-07, 311, 387, 389, 391, 393, 395, 397, 406, 408, 410), indicating that she has no more than moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), p. 32 (4th ed. rev. 1994). However, Dr. Archibong's report reflected extreme mental limitations that were starkly inconsistent with this GAF score, as well as assessments from other examiners. (Tr. 420, 422, 426, 429, 253-55). The ALJ considered the medical records as a whole and concluded that Dr. Archibong's opinion, that plaintiff had marked functional limitations, was inconsistent with other medical evidence of the record and not entitled to significant weight. (Tr. 60). Accordingly, the ALJ did not err in his assignments of weight to Dr. Archibong.

Similarly, substantial evidence supports the ALJ's assignment of very little weight to Dr. Fleurimond's opinion on the ultimate issue of disability, specifically her functional assessment that Ms. Wilson could not work. As the ALJ correctly noted, Dr. Fleurimond's determination that Ms. Wilson could not work flatly contradicted her own assessment of Ms. Wilson. Despite finding only mild limitations in her medical assessment, Dr. Fleurimond's report suggested much more severe restrictions, many of which were based on an unsupported claim of scoliosis. As such, the ALJ noted that Dr. Fleurimond's medical opinion was inconsistent with the record, and properly assigned it little weight.

Finally, Dr. Bennett's opinion is similarly inconsistent with his assessment of Ms. Wilson and the medical evidence in the record. Dr. Bennett opined that Ms. Wilson was unable to sit six hours in an eight-hour work day; was unable to stand two hours in an eight-hour work day;

would need to lie down an inestimable amount of time during an eight-hour work day; and would be absent at least 30 days out of a work year in a competitive environment. (Tr. 505). However, as the ALJ noted, several prior notes and examinations by other treating sources demonstrate significantly less restrictive limitations than those found by Dr. Bennett. (Tr. 371, 381-82, 420). In light of the correspondence between the evidence cited by the ALJ and the findings of the physicians, all of this evidence was considered properly by the ALJ, and I find that the ALJ's findings are explained adequately and are supported by substantial evidence.

Ms. Wilson next argues that the ALJ's physical RFC findings were incomplete. Pl.'s Mot. at 48-49. Specifically, she maintains that the ALJ, in limiting her to sedentary work "as it is defined by the regulations," failed to properly address how long Ms. Wilson could sit in an eight-hour work day. She contends that the regulations "only define the lifting requirements of sedentary work." Contrary to her assertions, however, the applicable regulations related to sedentary work define both the lifting *and* sitting requirements. *See* 20 C.F.R. §§ 404.1567(a) and 416.967(a). Critically, Ms. Wilson overlooks the subsection that states that "a sedentary job is defined as one which involves sitting." *Id.* Moreover, the ALJ asked the VE to consider Dr. Najar's opinion, which specifically indicated that Ms. Wilson could sit six hours in an eight-hour work day, to which he responded that such an opinion was consistent with sedentary work. (Tr. 69, 325). *See Taylor v. Astrue*, 2012 WL 294532, at *6 (D. Md. January 31, 2012) (finding that sedentary work generally requires six hours of sitting in an eight-hour work day). For these reasons, the ALJ's RFC determination was supported by substantial evidence.

Ms. Wilson also argues that the ALJ's RFC did not properly detail her mental limitations. Pl.'s Mot. 49. However, Ms. Wilson misstates the requirements of an RFC determination. The regulations explain that, in formulating an RFC, an ALJ must express capacity in terms of work-related functions and provide examples of various types of functions that could be limited. SSR 96-8p. The regulations do not, however, require an ALJ to discuss a functional area where there is no limitation. Ms. Wilson fails to highlight, and this Court is unable to find, any medical evidence supporting any functional impairment that is not addressed by current limitations. Therefore, although the ALJ's discussion on Ms. Wilson's mental functioning is not perfect, substantial medical evidence from her physicians on this issue led him to conclude properly that Ms. Wilson's mental status was intact and normal. For these reasons, the ALJ's RFC determination that Ms. Wilson's impairments limited her to unskilled, routine and repetitive work was sufficiently detailed and was supported by substantial evidence.

Finally, Ms. Wilson contends that the ALJ's hypothetical question to the VE was incomplete. Pl.'s Mot. at 49-52. Specifically, she first claims that the question did not accurately specify her ability to sit, stand or lift and second that Exhibit 12 was relied on inappropriately because it was not completed by Ms. Wilson's treating physician and it was completed without the benefit of subsequent medical evidence. Pl.'s Mot. at 50-52. I find no merit in this argument, because the hypothetical presented to the VE was supported by substantial evidence and adequately included all the limitations that were deemed credible by the ALJ. The ALJ is afforded "great latitude in posing hypothetical questions," *Koonce v. Apfel*, No. 9801144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999), and need only pose those that are based

on substantial evidence and accurately reflect a claimant's limitations.  *See Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988).

Despite the fact that the ALJ's hypothetical asked the VE to consider certain specific limitations including postural, manipulative, handling, fingering, bilateral, frequent, and environmental, (Tr. 69), the VE knew to consider all of the limitations associated with sedentary work, which comport with the RFC the ALJ found.  The VE is highly-experienced and well-trained in these assessments and it is apparent from her testimony that she understood what the ALJ intended to convey – that Ms. Wilson's assessment reflected her ability to perform sedentary work.  Moreover, if the VE had any confusion as to the sitting, standing and/or lifting requirements, she would have asked the ALJ for clarification.  Therefore, any error in the phrasing of the hypothetical is harmless.

Ms. Wilson's next contention is similarly deficient.  She argues that Exhibit 12F was an RFC assessment from a DDS physician who never examined or treated her and also that the assessment was completed without the benefit of medical evidence from Drs. Fleurimond and Bennett.  Pl.'s Mot. 51.  However, this Court has recognized that an ALJ may rely on non-examining physicians' opinions and give those opinions greater evidentiary weight than treating source opinions.  *See Epperson v. Astrue*, 2010 WL 4340681, at *2 (D. Md. November 2, 2010).  Additionally, Ms. Wilson fails to show how any of the records from her treating physicians – which the ALJ determined after a thorough review were internally inconsistent and contrary to the evidence of the record – may have changed the DDS physician's completion of the RFC assessment.  In the absence of any specific reference to a medical report or test, it is difficult for this Court to ascertain if or how the DDS physician's inability to review the remaining evidence of the record adversely affected – or even had any effect on – his conclusions.  Accordingly, the ALJ's reliance on Exhibit 12F was appropriate.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 17) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 27) will be GRANTED.  The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.


Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge